OPINION
Valeria Castle appeals from a judgment of the Juvenile Division of the Montgomery County Court of Common Pleas, which granted permanent custody of Castle's three children to the Montgomery County Children Services Board ("CSB").
The state's evidence established the following facts.
On April 11, 1997, CSB removed Castle's three children, DaVonne, Dymond, and Eric Conner, from the custody of Castle and the children's father, Derrick Conner,[1] after a domestic dispute resulted in DaVonne, who was then two and a half months old, being left home alone. CSB filed complaints alleging that all three children were neglected and dependent and seeking protective custody. The trial court agreed with the CSB and granted it protective custody of all three children on May 25, 1997. At this time, the children remained with their mother.
CSB developed a case plan stating what Castle needed to accomplish to remedy the situation resulting in the grant of protective custody to CSB. The plan required Castle to fulfill several prerequisites in order to be reunited with her children: obtain and maintain employment, obtain and maintain adequate housing, complete domestic violence counseling, undergo a drug and alcohol assessment, and undergo a parenting and psychological assessment and follow through with its recommendations. It is the position of CSB that Castle never substantially complied with these requirements.
On October 24, 1997, CSB sought temporary custody of all three children because Castle had lost her subsidized housing and the children were homeless. Interim temporary custody was granted to CSB on November 4, 1997. The court granted an extension of the temporary custody on December 11, 1998. On January 8, 1999, CSB requested permanent custody of the children. On July 17, 2000, following a permanent custody trial held on February 29, April 19, and May 26, 2000, the magistrate granted permanent custody to CSB. The trial court overruled Castle's objections to the magistrate's decision on March 28, 2001, and Castle appealed.
Castle raises one assignment of error on appeal.
 WHETHER THE COURT'S DECISION TO GRANT PERMANENT CUSTODY WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF SUFFICIENT EVIDENCE OR WITH CLEAR AND CONVINCING EVIDENCE AND WAS A RESULT OF ABUSE OF DISCRETION, AND THEREBY VIOLATED DEFENDANT'S CONSTITUTIONAL RIGHT TO DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I SECTION 10 OF THE OHIO STATE CONSTITUTION.
Castle appears to make both a sufficiency of the evidence argument and a manifest weight of the evidence argument. Therefore, we will review the facts under both standards. An appeal based on sufficiency of the evidence requires us to consider whether any rational trier of fact could have found that the evidence presented by the prevailing party was sufficient to justify the trial court's decision. See State v. Thompkins
(1997), 78 Ohio St.3d 380, 386-87; see also State v. Jenks (1991),61 Ohio St.3d 259, 273. When a judgment is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." Thompkins, supra, at 387, citing State v. Martin
(1983), 20 Ohio App.3d 172, 175. A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the [judgment]." Martin,20 Ohio App.3d at 175.
The trial court's decision to award permanent custody to CSB must be supported by clear and convincing evidence establishing that the children could not have been placed with either parent within a reasonable amount of time and that granting permanent custody to CSB was in the children's best interests. See R.C. 2151.414(B)(2). In determining whether a child can be placed with either parent within a reasonable amount of time, the trial court considers sixteen factors. See R.C. 2151.414(E). CSB points us to three of those factors in this case:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
* * *
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child.
* * *
 (14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.
CSB contended in the trial court that Castle failed to remedy the situation that caused her children to be removed from her care by displaying an unwillingness to comply with the requirements of her case plan. The trial court found that Castle had not substantially complied with her case plan objectives as of the first date of the hearing. Although the court noted improvement in Castle's compliance over the course of the hearing, which took place over several months, the court emphasized that Castle had had two years, during which the children were in foster care prior to CSB's request for permanent custody, to complete the objectives of her case plan and to remedy the situation that had resulted in their removal. However, she failed to make substantial strides in complying with her case plan until just before and over the course of the permanent custody hearing. Noting the need for permanence in the children's lives, the trial court thus concluded that Castle had failed to substantially comply with some requirements of her case plan. The trial court focused on her failure to obtain and maintain steady employment.
We will review each of the requirements of Castle's case plan.
First, Castle was required to obtain and maintain employment. She obtained many jobs, but was always fired or quit within a short period of time. During the period when CSB had temporary custody of her children, Castle never held a job for more than six weeks. At the time of the permanent custody hearing, Castle was unemployed. Therefore, the trial court's finding that Castle had not completed this requirement of her case plan was supported by clear and convincing evidence.
Second, Castle was required to obtain and maintain adequate housing. She attempted to do so during the two years preceding the permanent custody hearing but experienced difficulty because she had been evicted, had lost her subsidized housing, did not have a steady income, and had lied on applications. While Castle had obtained Section 8 housing a week before the permanent custody hearing began, she cannot be said to have maintained housing, as was required by her case plan.
Third, Castle was required to attend classes on domestic violence, which was a problem in the household. She did attend the classes, but minimized the problem, and was therefore unable to obtain further counseling. However, the trial court found that she substantially complied with this requirement.
Fourth, Castle was required to undergo a drug and alcohol assessment, which she did.
Fifth, Castle was required to undergo a parenting and psychological assessment and to comply with any recommendations. Castle underwent the assessment, which was done by Dr. McCarley. He recommended that she sever her relationship with the children's father, engage in mental health counseling, have an evaluation to determine whether she needed antidepressants, find and obtain steady employment, find and obtain adequate housing, and seek family planning assistance. As noted above, Castle failed to comply with at least some of these requirements-those involving employment and housing. Castle did attend some counseling sessions just before the permanent custody hearing, and counseling was ongoing at the time of the hearing.
We find that CSB presented sufficient evidence from which the trial court could have concluded that the children could not have been returned to Castle's care within a reasonable period of time and that granting permanent custody to CSB was in the best interests of the children. Although Castle's efforts to comply with her case plan increased over the course of the permanent custody hearing, the trial court reasonably determined that she did not substantially comply. Furthermore, she delayed unnecessarily in making attempts to comply, and the trial court was justified in finding that the children needed permanence in their lives after two and a half years in foster care.
For the same reasons discussed above, we cannot find that the trial court's decision awarding permanent custody of the children to CSB was against the manifest weight of the evidence. The evidence showed that Castle did fail to comply with at least some aspects of her case plan. She made little progress for two years while her children were in foster care, and the trial court found that the children needed permanence in their lives.
The sole assignment of error is overruled.
The judgment of the trial court will be affirmed.
BROGAN, J. and YOUNG, J., concur.
[1] Although Conner was also divested of parental rights, he did not appeal that decision. Therefore, we are concerned only with Castle in this appeal.